IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

<pre>
                                *
DENNIS C. CITRANO, et al.,
                                *
      Plaintiffs,
                                *
          v.                          CIVIL NO.: WDQ-13-2158
                                *
JOHN CRANE-HOUDAILLE, INC.,
      et al.,                   *

      Defendants.               *

*     *     *     *     *     *     *     *     *     *     *     *     *
</pre>

MEMORANDUM OPINION

Dennis C. Citrano, now deceased,[1] sued General Electric

Company ("GE") and others[2] for strict liability and other state

---

[1] A lawsuit brought by Annette C. Snyder and Mark A. Plasecki, as personal representatives of the Estate of Dennis C. Citrano, and Citrano's surviving children, Synder, Dennis C. Citrano, II, and Elena Babcock, was consolidated with Citrano's suit. *See* ECF No. 78 at 5.

[2] The plaintiffs also sued John Crane-Houdaille, Inc.; E.L. Stebbing & Co., Inc.; Hampshire Industries, Inc.; Universal Refractories Company; Jim M. Blundon, Esquire; Premier Refractories Co.; The Goodyear Tire & Rubber Company; MCIC, Inc.; CBS Corporation; Metropolitan Life Insurance Company; A.W. Chesterton Company; Certainteed Corporation; Kaiser Gypsum Company, Inc.; Union Carbide Corporation; International Paper Company; Bayer Cropscience, Inc.; H.B. Fuller Co.; Cooper Industries, Inc.; Pfizer Corporation; Schneider Electric USA, Inc.; The Wallace & Gale Asbestos Settlement Trust; Conwed Corporation; Foster Wheeler Corporation; Selby, Battersby & Co.; Green, Tweed & Co.; Ferro Engineering Division of On Marine Services Company; Foseco, Inc.; Wayne Manufacturing Corporation; Lofton Corporation; General Refractories Company; Koppers Company, Inc.; SB Decking Inc.; Georgia Pacific Corporation; Crown, Cork & Seal Co., Inc.; Georgia-Pacific, LLC; and Hopeman Brothers, Inc., (collectively, the "non-removing defendants").

law tort claims. ECF No. 2. GE removed to this Court. ECF No. 1. Pending is the plaintiffs' motion to remand or to sever and remand the claims of the non-removing defendants. ECF No. 78. No hearing is necessary. Local Rule 105.6 (D. Md. 2011). For the following reasons, the motion will be denied.

I. Background[3]

On March 17, 2011 and September 11, 2012,[4] the plaintiffs sued GE and the non-removing defendants in the Circuit Court for Baltimore City for injuries[5] resulting from Citrano's exposure to asbestos from 1960 to the late 1970s while working as an electrician. *See* ECF No. 2-1 at 2, 5. They asserted the following state law claims: (1) strict liability; (2) breach of warranty; (3) negligence; (4) fraud; (5) conspiracy; (6) market share liability; and (7) wrongful death. ECF No. 2 at 9.

On June 26, 2013, the plaintiffs filed answers to the defendants' joint interrogatories. ECF No. 3 at 2. In one response, the plaintiffs note that "Mr. Citrano was potentially

---

[3] The facts are taken from the complaint, ECF No. 2, the notice of removal and its exhibits, ECF No. 1, the motion and its exhibits, ECF No. 78, GE's opposition to the motion, ECF No. 80, and the plaintiff's reply, ECF No. 81.

[4] On July 15, 2013, these suits were consolidated. ECF Nos. 1-4 at 2, 78 at 5.

[5] On December 1, 2010, Citrano was diagnosed with lung cancer. ECF No. 2 at 11. On March 19, 2012, Citrano died. ECF No. 1 at 2. An autopsy concluded that he died from malignant mesothelioma, not lung cancer. *Id.*

exposed to the asbestos products for which the direct Defendants are responsible from approximately the 1960's to the 1970's." *Id.* at 3. A different interrogatory asked the plaintiffs to provide identifying information "[f]or each job at which you allege [Citrano was] exposed . . . to asbestos-containing products manufactured, distributed or sold by this Defendant." *Id.* at 39. Among several other jobs, the plaintiffs stated that Citrano worked from 1968 to 1971 in Baltimore, Maryland as an electrician second class at the Bethlehem Steel Sparrows Point Shipyard in the *U.S.S. Santa Barbara* engine rooms. *Id.* at 40-41. The plaintiffs asserted that Citrano was exposed to asbestos at this job from "[p]ipecovering, block, and cement supplied, installed, and/or manufactured by McCormick Asbestos Company, Wallace & Gale; asbestos panels supplied, installed and/or manufactured by International Paper Company, CBS Corporation, Hopeman Brothers." *Id.*

Twenty-nine days later, on July 25, 2013, GE removed to this Court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1).[6] *See* ECF No. 1 at 1-2. In its notice of removal, GE states that "[t]hese discovery responses" indicated, for the first time, that the plaintiff was asserting "a claim against GE for Mr. Citrano's alleged exposure to [asbestos in] GE equipment

---

[6] The other defendants did not join in removing the case. *See* ECF No. 1.

3

or other products during the time he worked aboard a U.S. Navy ship." *See id.* at 3. GE notes that the products it manufactured under contract with the Navy, including marine steam turbines, "were subject to strict Navy control and supervision over all aspects of the products' design and manufacture, including . . . the presence of asbestos in such products and the existence of any warnings affixed to or issued in connection with the turbines or other products." *Id.* at 3-4.

To support its notice of removal, GE included several declarations which discuss the nature of its relationship with the Navy. David Hobson, a GE employee from 1969 until 1996, declared that he "held various product support and managerial positions" at GE "involving steam turbines intended for installation aboard U.S. Navy vessels." ECF No. 1-6 at 3. Throughout his time at GE, he "had frequent and extensive business dealings" with Navy employees "in connection with the Navy's purchase and use of" GE turbines. *Id.* at 3-4. He gained "personal knowledge of the great extent of Navy control over GE's design and manufacture of Navy turbines" through first-hand experience as a GE employee and through outside "education, training and experience accumulated throughout [his] career." *Id.* at 4.

Hobson declared that GE's turbines were designed, tested, and manufactured under the close control and precise

4

specifications of the Navy. *See id.* at 7-11. GE's Navy
turbines were not manufactured using any material containing
asbestos--the turbines were "bare metal" with only a coat of
paint. *See id.* at 12. Thermal materials that may have
contained asbestos were supplied by separate manufacturers and
installed in the turbines after they left GE's manufacturing
plant. *Id.*

In addition to the precise specifications governing the
construction of Navy turbines, "the Navy had precise
specifications, practices, and procedures . . . that governed
the content of any communication affixed to machinery purchased
by the Navy" and any "written materials that the manufacturer
was required to deliver" with the turbines. *See id.* at 13. GE
could not, without the Navy's permission, affix warnings to its
turbines, or include warnings in the product manuals, "that
addressed the alleged hazards of products that were not supplied
by GE, such as thermal insulation materials." *See id.* at 13-14.
If GE had included such "extraneous matter," the Navy would have
rejected the manual or item with the affixed warning. *See id.*
Based on his experience, Hobson declared that "the Navy, not
individual equipment manufacturers like GE, exercised absolute
authority to determine precisely what hazards aboard its ships
would be subject to warnings" and those warnings' content. *See
id.* at 15-16.

Ben J. Lehman, a U.S. Navy Rear Admiral, also attested to his extensive experience with naval ship-building practices. *See* ECF No. 1-7 at 3. At various times from 1942 through 1975, Lehman served as a Navy Ship Superintendent, worked as an engineer for GE, and served as a director for two major ship building companies. *See id.* He declared that from at least the 1940s onward, "[m]ilitary specifications governed every characteristic of" equipment used on Navy ships, including "the decision of what warnings should . . . be included." *See id.* at 4-5. The Navy also exercised close control and final approval authority of all "written information that accompanied a piece of equipment," including manuals and "precautionary labeling." *See id.* at 5. Equipment manufacturers could not provide any warnings without Navy approval, and certain warnings--including warnings of risks from asbestos exposure--were not approved by the Navy. *See id.* If a manufacturer like GE had affixed warnings about asbestos to its products, or included such warnings in its manual, the Navy would have rejected the product and the manual. *See id.* at 6.

GE also submitted the declaration of Lawrence Stilwell Betts, a medical doctor and scientist, who served in the U.S. Navy from 1972 to 2001. *See* ECF No. 1-8 at 3. Based on his extensive "scientific and medical training, and experience as a Navy officer," he is "generally familiar with the industrial

products and equipment" used by the Navy and the Navy's
"occupational health program" from before World War II until
2009.  *See id.* at 3-4, 29.

Betts declared that turbine manufacturers did not furnish
or install thermal insulation in turbines, and "military
necessity" drove the Navy to use this asbestos-carrying
material.  *See id.* at 5-6.  From at least the early 1920s,
however, the Navy knew that exposure to asbestos could lead to
pulmonary disease and other health hazards.  *See id.* at 6-7, 20.
As a result, the Navy developed an "occupational safety and
health program that addressed asbestos and other health hazards
. . . [u]sing established scientific and medical knowledge."
*See id.* at 20.  Thus, based on the information available at any
time, "the Navy was fully aware of the recognized health hazards
of asbestos."  *See id.* at 28.  The Navy's knowledge of asbestos
health effects "represented the state of the art," and "far
exceeded any information that possibly could have been provided
by a turbine manufacturer."[7]  *Id.* at 20, 23.

On August 23, 2013, the plaintiffs moved to remand the case
or to sever the claims against GE and remand the claims against
the non-removing defendants to state court.  ECF No. 78.  To

---

[7] GE also attached several other documents to its notice of
removal that substantiate the information provided in the
declarations.  *See, e.g.*, ECF No. 1-10 (report discussing Navy
use of asbestos-carrying material in pipe covering).

support their motion, the plaintiffs attached several different versions of Navy military specifications ("milspecs")--dated from 1936 through 1961--for mechanical and electrical equipment. *See, e.g.*, ECF Nos. 78-1, 78-5. The milspecs include detailed specifications for manuals that accompany machinery produced by third party manufacturers for use on Navy ships,[8] and the "procedures for submission, review, approval and revision of the service manual." *See* ECF No. 78-5 at 2. The milspecs also discuss the format and content of safety warnings, which they note should be "used to emphasize important and critical instructions as sparing as is consistent with real need." *See id.* at 6. However, such warnings should include discussion of "[o]perating procedures, practices, etc., which will result in personal injury or loss of life if not correctly followed." *Id.*

On September 9, 2013, GE opposed the motion to remand. ECF No. 80. On September 25, 2013, the plaintiffs replied. ECF No. 81.

II.  Analysis

A. Removal Jurisdiction

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States

---

[8] The 1961 milspecs state that the Navy "inten[ds] to accept the manufacturer's commercial type of manual or one prepared in accordance with his commercial practice whenever it is roughly equivalent to the detail requirements included herein." *Id.*

have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing where such action is pending." Under 28 U.S.C. § 1442(a)(1), federal officers and their agents have an "independent jurisdictional right" to remove a state civil action or criminal prosecution "for or relating to any act under color of such office" to federal court, "wholly apart" from § 1441. *Camero v. Kostos,* 253 F. Supp. 331, 335 (D.N.J. 1966) (internal quotation marks omitted).[9] Unlike removal under § 1441, under § 1442(a) the other defendants need not join in or consent for removal to be proper. *Joyner v. A.C. & R. Insulation Co.,* CIV. CCB-12-2294, 2013 WL 877125, at *2 n.4 (D. Md. Mar. 7, 2013) (*citing Plourde v. Ferguson,* 519 F. Supp. 14, 16 (D. Md. 1980)).

To qualify for removal under § 1442(a)(1), "the defendant must raise a colorable claim to a federal law defense and establish that there is a causal connection between plaintiffs' claims and acts it performed under color of federal office." *Pack v. AC & S, Inc.,* 857 F. Supp. 26, 28 (D. Md. 1994) (*citing Mesa,* 489 U.S. at 124-25, 129-31, 134-35, 109 S. Ct. at 962-63,

_____

[9] *See also Mesa v. California,* 489 U.S. 121, 136, 109 S. Ct. 959, 968, 103 L. Ed. 2d 99 (1989) ("Section 1442(a) . . . is a pure jurisdictional statute, seeking to do nothing more than grant district court jurisdiction over cases in which a federal officer is a defendant.").

9

964-66, 967-68). The defendant does not need to prove that his federal immunity defense will succeed to obtain removal. *Jamison v. Wiley*, 14 F.3d 222, 238 (4th Cir. 1994). The Supreme Court has cautioned against a "narrow, grudging" interpretation of the federal officer removal statute, explaining that, "the validity of the defense of official immunity [should be] tried in a federal court." *Willingham v. Morgan,* 395 U.S. 402, 407, 89 S. Ct. 1813, 23 L.Ed.2d 396 (1969); *see also Kolibash v. Comm. on Legal Ethics of W. Virginia Bar*, 872 F.2d 571, 576 (4th Cir. 1989) ("[T]he right of removal conferred by § 1442(a)(1) is to be broadly construed.").

To remove a case, the defendant must file a notice of removal in the district court within 30 days after receiving the initial pleading. 28 U.S.C. § 1446(b)(1). If the case stated by the initial pleading is not removable, the defendant may remove within 30 days of receiving "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3).[10]

---

[10] The 30-day removal limitation:

> deprive[s] the defendant of the undeserved tactical advantage that he would have if he could wait and see how he was faring in state court before deciding whether to remove the case to another court system; and ... prevent[s] the delay and waste of resources involved in starting a case over in a second court

To determine when a defendant first had notice of grounds for removal, the Court must "rely on the face of the initial pleading and on the documents exchanged in the case by the parties." *Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997). The Court need not "inquire into the subjective knowledge of the defendant," but must consider only whether grounds for removal were "apparent within the four corners of the initial pleading or subsequent paper." *Id*. If details were "obscured or omitted" or "inadequately" stated, the defendant will not have been charged with knowledge of removability.[11]

---

after significant proceedings, extending over months or even years, may have taken place in the first court.

*Wilson v. Intercollegiate (Big Ten) Conference Athletic Ass'n,* 668 F.2d 962, 965 (7th Cir. 1982), *cert. denied,* 459 U.S. 821 (1982) (*quoted in Link Telecommunications, Inc. v. Sapperstein*, 119 F. Supp. 2d 536, 544 (D. Md. 2000)).

[11] *Lovern,* 121 F.3d at 162 (*citing Foster v. Mut. Fire, Marine & Inland Ins. Co.,* 986 F.2d 48, 54 (3d Cir. 1993) ("[T]he relevant test is not what the defendants purportedly knew, but what these documents said."), *overruled on other grounds by Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 119 S. Ct. 1322, 143 L.Ed.2d 448 (1999); *Chapman v. Powermatic, Inc.,* 969 F.2d 160, 163 (5th Cir. 1992) ("[T]he [30] day time period in which a defendant must remove a case starts to run from defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face" the grounds for removal.)); *accord Akin v. Ashland Chem. Co.,* 156 F.3d 1030, 1035 (10th Cir. 2008) (stating that notice "ought to be unequivocal;" grounds for removal "should not be ambiguous" or "require[] an extensive investigation" (internal quotation marks omitted)); *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 206 (2d Cir. 2001) (the defendant must "apply a reasonable amount of intelligence in

This "bright-line test" also "guards against premature and protective removals . . . thereby minimizing the potential for a 'cottage industry of removal litigation.'" *Dijkstra v. Carenbauer*, 5:11CV152, 2012 WL 1533485, at *5 (N.D.W. Va. May 1, 2012) (*quoting Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 698 (9th Cir. 2005)).

### 1. Timeliness of Removal

The plaintiffs argue that "there are no facts before this Court which would support the propriety of GE's removal of this action to federal court," because the interrogatory answers do not state "that decedent was exposed to any product manufactured by GE onboard the *U.S.S. Santa Barbara*." ECF No. 78 at 6-7. In response, GE states that it "supplied the main propulsion turbine units . . . and three Ship Service Turbine Generators . . . for the *U.S.S. Santa Barbara* pursuant to contracts with the U.S. Navy," and that "[t]hese turbines are located in the engine rooms of ships." ECF No. 80 at 6. GE contends that "[b]ased on prior rulings from this Court, when plaintiffs identify a specific Navy ship aboard which the decedent worked, GE is placed on notice such that the thirty-day time period for removal begins to run." *Id.*

---

ascertaining removability" but need not "look beyond the initial pleading for facts giving rise to removability").

In several cases in this circuit--after holding that the pleadings did not establish a basis for removal--courts have found that a basis for removal under § 1442(a) may be ascertained by manufacturers supplying equipment under Navy contracts when the plaintiff identifies in discovery papers the dates of his alleged exposure to asbestos on particular U.S. Navy ships. *See, e.g.*, *Hurley v. Alltite Gaskets*, CIV.A. GLR-12-462, 2012 WL 4764901, at *1-*2 (D. Md. Oct. 5, 2012) (removal timely because discovery responses "indicated, for the first time, the U.S. Navy vessels on which [plaintiff] was allegedly exposed to asbestos" which provided "the triangular nexus between [plaintiff], GE, and the U.S. Navy Vessels allegedly a part of the asbestos exposure"); *Covington v. Owens Illinois Glass Co.*, CIV.A. GLR-12-461, 2012 WL 4764883, at *1-*2 (D. Md. Oct. 5, 2012) (same); *Houser v. Ammco Tools, a/k/a Hennessy Indus., Inc.*, CIV.A. RDB-13-1179, 2013 WL 3364377, at *3-*4 (D. Md. July 2, 2013) ("[Plaintiff] alleged exposure to asbestos associated with equipment aboard the *USS Geiger* and *USS Forrestal,* and thus put Westinghouse on notice that [plaintiff] was allegedly injured while Westinghouse was under the direction of a federal official"). Here, the plaintiffs' June 26, 2013 interrogatory answers alleged that Citrano was exposed to asbestos while he worked on the *U.S.S. Santa Barbara* from 1968 to 1971. *See* ECF No. 3 at 40-41. Further, the answers stated

13

that Citrano was exposed to asbestos in products located in the
*Santa Barbara* engine room, in which GE knows its turbines
manufactured under U.S. Navy contracts were housed. *See id.*;
ECF No. 80 at 6; *Beamis v. Buffalo Pumps, Inc.*, CIV.A. 08-472S,
2009 WL 462543, at *3 (D.R.I. Feb. 23, 2009) (holding removal
was timely, when GE "based its removal on Plaintiff's discovery
responses specifying the particular submarines on which he
worked and its knowledge that many of those submarines were
equipped with GE marine turbines custom manufactured for the
Navy"); *see also In re Asbestos Products Liab. Litig. (No. VI)*,
770 F. Supp. 2d 736, 740 (E.D. Pa. 2011) ("Defendant did not
have a basis for removal until the nexus between Plaintiffs'
claims and actions allegedly taken by Defendant under the
direction of a federal officer was established."). Accordingly,
even if the plaintiffs' June 26, 2013 discovery responses did
not name GE or its products specifically, they provided
sufficient facts for GE to ascertain a basis for removal under
§ 1442(a), and GE's removal within 30 days of the filing of
these responses was timely.

2. Colorable Federal Defense

The plaintiffs argue that GE cannot establish a colorable
federal defense to their failure to warn claim, because
"[a]lthough the government may have arguably exercised control
over GE's manufacture of the turbines[,] . . . it did not

14

preclude GE from warning the Navy and potential users and/or bystanders of the hazards associated with its product." *See* ECF No. 78 at 9-10. In response, GE contends that the evidence supporting its notice of removal establishes that it "manufacture[d] its marine turbines and other products subject to strict specifications, regulation, and control by the U.S. Navy and its officers, both as to the design of turbines and as to the furnishings of written materials and warnings." ECF No. 80 at 11.

To establish a federal contractor defense in a failure to warn case, the defendant must show: "(1) the government exercised its discretion and approved certain warnings for the products; (2) the warnings provided by the contractor conformed to the federal specifications; and (3) the contractor warned the government about dangers known to the contractor but not to the government."[12] *Joyner,* 2013 WL 877125, at *7 (*citing Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003 (7th Cir. 1996)). Warnings to the government are not required when the government

---

[12] In a design defect case, in contrast, the federal contractor defendant must show that: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle v. United Techs. Corp.,* 487 U.S. 500, 512, 108 S. Ct. 2510, 101 L.Ed.2d 442 (1988). The plaintiffs' motion to remand states that it will assert "failure to warn" claims against GE. *See* ECF No. 78 at 9-10.

agency knew more about the danger than the contractor. *See,*
*e.g., Beaver Valley Power Co. v. Nat'l Eng'g & Contracting Co.,*
883 F.2d 1210, 1216 (3d Cir. 1989); *see also Ramey v. Martin-*
*Baker Aircraft Co. Ltd.*, 874 F.2d 946, 951 (4th Cir. 1989)
(federal contractor defense applied despite contractor's failure
to warn because the record revealed that the Navy already had
"full knowledge of the danger").

a. Specifications for Warnings

The plaintiffs argue that Navy "[m]ilitary [s]pecifications
from at least the 1950s forward dictated that manufacturers
provide appropriate warnings of hazards associated with
equipment" and "indicate that the [Navy] relied heavily upon
manufacturers to identify and articulate hazards associated with
their products." ECF No. 78 at 11. GE contends that its
evidence establishes that "the Navy strictly controlled the
materials and warnings that could accompany GE's products, and
that warnings as to the hazards of asbestos used in connection
with its turbines would have been prohibited by the Navy." ECF
No. 80 at 20.

GE's evidence establishes that the Navy chose to exert
close control over the communications provided by GE to users of
its products created under Navy contracts, and that GE conformed
to the Navy's specifications. For example, Hobson's declaration
states that "the Navy had precise specifications controlling the

16

nature of written materials that the manufacturer was required to deliver with Navy turbines." ECF No. 1-6 at 13. Under these specifications, "GE was not permitted . . . to affix any type of warning to a Navy turbine that addressed alleged hazards of products that were not supplied by GE," unless directed by the Navy. *Id.* If GE had tried to include information in its manuals "not expressly called for by the Navy," the Navy would have rejected the manual. *Id.* at 14.

Lehman's declaration states that "[t]he Navy was intimately involved with and had final approval of all . . . operating manuals, safety or hazard information, and any other written information that accompanied a piece of equipment." ECF No. 1-7 at 5. It also states "that equipment suppliers were prohibited from providing any warnings on or to accompany equipment supplied by the Navy without" the Navy's approval, and asbestos warnings were not approved. *Id.* Although the plaintiffs' milspecs evidence establishes that the Navy "inten[ded] to accept the manufacturer's commercial type of manual" under certain circumstances, *see* ECF No. 78-5 at 2, the detailed specifications support--rather than contradict--GE's evidence that the Navy exerted tight control over the contents of equipment manuals and warnings, *see, e.g.*, ECF No. 78-5.[13]

---

[13] Further, although the milspecs require manufacturers to provide warnings of safety hazards in their manuals, *see, e.g.*,

17

Thus, GE's evidence is sufficient to show that the Navy "exercised its discretion" to approve only certain warnings for products and GE's products would have been rejected if GE had not conformed to the requirements, satisfying the first two elements of a "colorable" federal contractor defense. *See, e.g., Joyner*, 2013 WL 877125, at *7-*8 (first two elements of defense satisfied by affidavit of Rear Admiral attesting that the Navy had "precise specifications" for any communications accompanying equipment for Navy ships and that defendant conformed to the specifications); *Nesbiet v. Gen. Elec. Co.*, 399 F. Supp. 2d 205, 211-13 (S.D.N.Y. 2005) (information in GE's Lehman affidavit establishing Navy control over the content of warnings—and the Navy's likely rejection of any equipment with warnings that deviated from its specifications--satisfied first two elements of a colorable federal contractor defense).

b. Obligation to Warn Government of Known Dangers

The plaintiffs contend that GE's evidence is "devoid of any suggestion that the Navy had knowledge asbestos exposure can cause mesothelioma. Thus, GE has offered no evidence that its own knowledge regarding hazards of asbestos and that of the Navy

_____

78-1 at 15, they also note that these warnings should be used "sparing[ly]" and that all manuals are subject to approval by the Navy, *see, e.g.*, ECF No. 78-4 at 2, 6. Also, the milspecs do not contradict GE's assertion that the Navy did not approve the inclusion of asbestos warnings in equipment supplier manuals. *See* ECF No. 1-7 at 5.

were congruent." *See* ECF No. 78 at 14.  GE contends that "[t]he Betts Declaration establishes that GE had no knowledge concerning the potential hazards of asbestos that was not known to the U.S. Navy."  ECF No. 80 at 11.

Betts's declaration states, *inter alia*, that the Navy's knowledge about "the health hazards associated with [asbestos] use aboard Navy vessels[] represented the state-of-the-art and far exceeded any information" that GE could have provided.  ECF No. 1-8 at 28.  He also declares that "the Navy was fully aware of the recognized health hazards of asbestos."  *Id*.  This evidence is sufficient to meet GE's burden to show that the Navy and GE had at least equivalent knowledge of the health hazards of asbestos--even if Betts did not discuss the Navy's knowledge of mesothelioma risks specifically--as GE only must establish that its federal defense is "colorable" to remove the case. *See, e.g.*, *Joyner*, 2013 WL 877125, at *7-*8 (defendant presented "plausible," and therefore colorable, federal defense to failure to warn claim by alleging, *inter alia*, that the "the Navy 'possessed knowledge regarding the hazards of asbestos equal to or superior to its equipment suppliers'"); *Nesbiet*, 399 F. Supp. 2d at 212 (finding Betts's declaration that Navy knowledge of asbestos risks was "state-of-the-art" sufficient to show that "the Navy would have known of any dangers that were known to

GE"). Accordingly, GE has established that it has a colorable federal defense to the plaintiffs' claims.

### 3. Causal Connection

To establish a causal connection,[14] GE must show that "the acts that form the basis for the state civil . . . suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations." *Campbell v. Brook Trout Coal*, LLC, CIV.A. 2:07-0651, 2008 WL 4415078, at *3 (S.D.W. Va. Sept. 25, 2008) (internal quotations omitted); *see also Mesa*, 489 U.S. at 132, 109 S. Ct. at 966 (defendant must "by direct averment exclude the possibility that [state court action] was based on acts or conduct of his not justified by his federal duty"). The causal connection requirement "is ordinarily satisfied whenever the removing defendant is able to establish a colorable government contractor defense." *Joyner*, 2013 WL 877125, at *9 ("Whenever a government contractor is sued under state law for . . . inadequate warnings, and the contractor colorably alleges that the . . . lack of adequate

---

[14] The plaintiffs contend that there is no causal connection between their claims and GE's "conduct under official authority," because "GE fails to allege that its contract with the government . . . *prohibited* it from affixing warning about the hazards of inhaling asbestos dust." ECF No. 78 at 15. Even if GE had to show that the Navy prohibited it from warning about asbestos risks, GE's evidence establishes that the Navy would have rejected manuals and warnings that discussed asbestos risks and that the Navy did not approve asbestos warnings. *See, e.g.*, ECF Nos. 1-6 at 13-14, 1-7 at 5.

warning is directly attributable to 'direct and detailed' government control, such that a different design or warning would have significantly conflicted with governmental regulations, it necessarily follows that there is 'a causal nexus between the plaintiff's claims and the conduct performed under color of federal office.'") (*citing Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 785 (E.D. Pa. 2010)). For the reasons discussed above, GE has offered evidence that it failed to provide warnings of asbestos risks because of the Navy's precise specifications governing the content of communications accompanying equipment manufactured for Navy ships. *See supra* Section II.A.2.a. Accordingly, removal is proper under § 1442(a), and the motion to remand will be denied.

B. Severance

The plaintiffs request that, if the Court does not remand its claims against GE, the Court sever the claims against the non-removing defendants and remand them to state court. *See* ECF No. 78 at 15. GE opposes severance, arguing that it would be "prejudicial," because, in the state court action, "all direct defendants are deemed to have cross-claims for contribution against all other direct defendants." ECF No. 80 at 24.

"In addition to granting independent jurisdiction over state-court cases involving federal officers, a § 1442(a)(1) removal to federal court creates ancillary jurisdiction over the

21

non-federal elements of the controversy." *Nikas v. Quinlan,* 29
F.3d 619, 619 n.1 (1st Cir. 1994)(*citing IMFC Prof'l Servs. of
Florida, Inc. v. Latin Am. Home Health, Inc.,* 676 F.2d 152, 158
(5th Cir. 1982)). Under 28 U.S.C. § 1367(c), the Court may
decline to exercise its supplemental jurisdiction over those
claims if (1) they "raise[] a novel or complex issue of State
law," (2) they "substantially predominate[]" over the federal
claims, or (3) there are "other compelling reasons for declining
jurisdiction." A state claim "substantially predominates" over
the claim that forms the basis of jurisdiction, if that claim
"is only an incident or adjunct of the state claim and . . . the
state claim is the crux of the action." *Jones v. Baugher,* 689
F. Supp. 2d 825, 834 (W.D. Va. 2010) (quoting *Spaudling v. Mingo
Cnty. Bd. of Educ.,* 897 F. Supp. 284, 289 (S.D.W. Va. 1995)). A
federal court deciding whether to exercise supplemental
jurisdiction, or to remand the case to state court, should also
"consider 'principles of economy, convenience, fairness, and
comity' and whether the efforts of a party in seeking remand
amount to a 'manipulative tactic.'" *See Hinson v. Norwest Fin.
S. Carolina, Inc.,* 239 F.3d 611, 617 (4th Cir. 2001) (*quoting
Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S. Ct.
614, 619, 98 L. Ed. 2d 720 (1988)).

Here, the plaintiffs' six state law tort claims against 36
non-removing defendants substantially predominate over the

22

single federal issue in this case--GE's assertion of the federal officer defense. However, if GE's federal defense fails and it is found liable in federal court, severing the claims will likely prejudice GE's ability to seek contribution through cross claims against the other defendants proceeding in state court. *Cf. Joyner*, 2013 WL 877125, at *10 (forcing defendant "to conduct simultaneous, parallel litigations in state and federal court . . . invit[es] diseconomy" and prejudices the defendant). Accordingly, considerations of fairness and economy weigh against remanding the claims against the non-removing defendants at this time.[15]

III. Conclusion

For the reasons stated above, the plaintiffs' motion will be denied.

2/26/14
_____
Date

_____
William D. Quarles, Jr.
United States District Judge

_____

[15] The plaintiffs may renew their motion to remand if GE cannot establish its federal defense or if GE obtains summary judgment on, or dismissal of, the claims against it. *See Joyner*, 2013 WL 877125, at *10; Charles A. Wright, Arthur R. Miller, *et al.*, *Remand*, 14C Fed. Prac. & Proc. Juris. § 3739 (4th ed. 2013) ("If the jurisdictionally sufficient federal claims are dismissed before trial commences . . . the district court ordinarily should remand the supplemental claims to the state court.")

23